KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER    Bar No. 278946
ADAM J. MCNEILE      Bar No. 280296
MALACHI HASWELL    Bar No. 307729
KATHERINE SASS      Bar No. 326185
1120 Mar West St., Ste C2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
adam@kbklegal.com
kristin@kbklegal.com
kai@kbklegal.com
katie@kbklegal.com

Attorneys for Plaintiff AURORA GARCIA-BORJON

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA GARCIA-BORJON, | **Case No.** |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **I.   FRAUDULENT MISREPRESENTATION AND CONCEALMENT;** |
| EVERBRIGHT, LLC, | **II.  NEGLIGENCE;** |
| Defendant. | **III. THE CONSUMERS LEGAL REMEDIES ACT (CIVIL CODE §1750, *ET SEQ.*);** |
| | **IV. VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CIVIL CODE §1788, *ET SEQ.*);** |
| | **V.  VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE §1689.5, *ET SEQ.*);** |
| | **VI. VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *ET SEQ.*)** |
| _____/ | JURY TRIAL DEMANDED |

**INTRODUCTION**

1.     This case involves a scheme in which Defendant EverBright, LLC ("EverBright") partners with unscrupulous door-to-door salespersons and contractors like Better Earth Solar ("Better Earth") target vulnerable consumers for the fraudulent installation and onerous

1
COMPLAINT

"financing" of solar panels. Plaintiff Aurora Garcia-Borjon ("Plaintiff") is a monolingual Spanish speaker living in Porterville, California.

2.     EverBright and its door-to-door sales agents preyed on Plaintiff, falsely representing that solar panels could be affixed to her home for free and that her energy bill would thereafter be drastically reduced. The salesmen thereafter created an email address to which Plaintiff did not have access to fraudulently affix her electronic signature on an expensive English-language power purchase agreement ("PPA") for solar panels that Plaintiff did not agree to. EverBright then installed solar panels and a battery (the "Solar Panel System") and attempted to collect on the fraudulent contract. Plaintiff did not sign a PPA, did not have access to the PPA since it was sent to an email address that she did not control, and even if she had received the PPA, could not have read and understood it since she does not know English.

3.     The PPA is not a mere trifle – it is a 25-year agreement that purports to require Plaintiff to pay over $115,000 for the power produced by the Solar Panel System.

4.     To keep the flow of PPAs and profits, EverBright authorizes door-to-door salespeople like those of Better Earth to sign consumers like Plaintiff up for multi-decade PPAs that provide almost no value to the consumer. EverBright gives these salespersons near carte blanche authority to enter "customers'" homes on EverBright's behalf, sign up "customers" for EverBright loans, facilitate the completion of PPA applications, and send out the PPA documents to the "customers." However, after providing this authority to the salespersons, EverBright systematically and purposefully fails to exercise oversight over these salespersons, rubber stamping the applications that the salespersons initiate, and ratifying even fraudulently procured agreements. Plaintiff, through no fault of her own, fell victim to this trap. Plaintiff did not agree to any contract with EverBright, let alone an enforceable PPA.

5.     Plaintiff sent EverBright a letter rescinding any alleged contracts or PPA in a letter dated November 7, 2024. To this day, despite Plaintiff lawfully rescinding any and all alleged contracts (which, regardless, were void *ab initio*), EverBright continues to insist the PPA is still valid.

6.     Plaintiff brings this action for Fraudulent Misrepresentation and Concealment, Negligence, and violations of the Consumers Legal Remedies Act ("CLRA"), Civ. Code §1750,

*et seq.*; the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Civ. Code §1788, *et seq.*; the Home Solicitation Sales Act (the "HSSA"), Civ. Code §1689.5, *et seq.*; and the Unfair Competition Law (the "UCL"), Bus & Prof. Code §17200, *et seq.*; and to obtain actual, statutory, civil, and punitive damages for the harm that she has suffered. Plaintiff also seeks a public injunction against EverBright, to enjoin its unlawful, unfair, and fraudulent conduct.

## PARTIES

7.      Plaintiff is an individual over the age of 18 years. At all times relevant herein, Plaintiff was, and currently is, a resident of the State of California, County of Tulare.

8.      Defendant EverBright is, and at all times relevant herein was, a Delaware limited liability company with its principal place of business in Florida, that at all times relevant herein was licensed to do business and was conducting business in California.

## AGENCY

9.      Furthermore, Plaintiff is informed, believes and thereon alleges that at all times mentioned herein Better Earth employees and/or representatives act as agents and at the direction of EverBright as part of the EverBright Program described below. EverBright retained the right to control the conduct of Better Earth, including by (1) requiring Better Earth sales agents to use specific software, applications, and technology when engaging in transactions with consumers on EverBright's behalf; (2) controlling the EverBright products Better Earth sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Better Earth and its sales agents; and (4) retaining the right to discipline Better Earth and sales agents for violations of policies and procedures set by EverBright. At all times, EverBright has ratified the conduct of Better Earth and its sales agents, including in the instant case.

## JURISDICTION AND VENUE

10.      This Court has federal diversity jurisdiction over Plaintiff's claims under 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds $75,000 and is between citizens of

3
COMPLAINT

different states.

11.     The Court has personal jurisdiction over EverBright because it purposefully availed itself of the privilege of conducting activities in California and directed its activities into this forum; Plaintiff's claims arise out of EverBright's forum-related activities; and the exercise of jurisdiction comports with fair play and substantial justice.

12.     Venue is proper in the Eastern District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. §1391(b)(2).

### FACTUAL ALLEGATIONS

### The Consumer Solar Panel Industry

13.     Solar is one of the fastest growing global industries, with a global valuation of $154.47 billion in 2020, estimated to balloon to over $1 trillion by 2028.[1] Though green energy in theory is a noble goal, the exponential growth in the industry has led to a commensurate growth in consumer fraud.

14.     EverBright oversees and then ratifies the fraud perpetrated by its agents such as Better Earth. As EverBright is well aware, the solar panel installation business is heavily populated with deceptive and dishonest contractors and finance companies targeting, preying upon, and ripping off vulnerable consumers.[2]

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion*, Apr. 25, 2022, https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html (last visited on October 19, 2022).

[2] *See* Alana Semuels, *How Easy Lending Can Lead to Fraud*, TIME, May 29, 2024, available at https://time.com/6982203/solar-lending-fraud/ (last visited June 11, 2024); John Fitzgerald Weaver, *Minnesota Sues GoodLeap, Sunlight, Mosaic and Dividend Over Dealer Fees,* PV MAGAZINE*, available at* https://pv-magazine-usa.com/2024/04/26/minnesota-sues-goodleap-sunlight-mosaic-and-dividend-over-dealer-fees/ (last visited June 17, 2024); Alana Samuels, *The Rooftop Solar Industry Could Be On the Verge of Collapse*, TIME, Jan. 25, 2024, *available at* https://time.com/6565415/rooftop-solar-industry-collapse/ (last visited June 17, 2024); Alana Samuels, *Rooftop Solar Power Has a Dark Side*, TIME, September 26, 2023, available at https://time.com/6317339/rooftop-solar-power-failure/ (last visited October 2, 2023); Bailey Schulz, *New Jersey Solar Company Allegedly Pressured Vulnerable Populations Into Contracts for a 'Shoddy Product'*, USA TODAY, April 12, 2023, available at https://www.usatoday.com/story/money/2023/04/10/vision-solar-panel-lawsuit/11600307002/ (last visited on September 22, 2023) (detailing class action suit filed in New Jersey on behalf of plaintiffs from five States alleging that solar panel leasing company Vision Solar salespeople used high-pressure sales tactics to convince homeowners - including low-income, disabled and elderly individuals - to purchase or lease solar panel systems); Press Release, Office of the Attorney General of the State of Kentucky, *Attorney General Cameron Leads Nine States in Urging Five Solar Lender Companies to Suspend Financial Obligations For Pink Energy Consumers*, November 22, 2022, available at https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1287 (last visited October 1, 2023); Press Release, Office of the Attorney General State of Idaho, *Attorney General Issues Tips for Homeowners on Solar Installations*, February 21, 2022, available at https://www.ag.idaho.gov/newsroom/attorney-

**EverBright's Scheme**

**A. EverBright's Partner Program**

15. The deceptive sales tactics of solar panel installation contractors are enabled, facilitated, and ratified by the large financing companies like EverBright that finance the projects. The industry is rife with scams due to the deputization of door-to-door salespersons tasked with signing vulnerable consumers up for tremendously expensive, multi-decade contracts and loans, leases, and PPAs.[3]

general-issues-tips-for-homeowners-on-solar-installations/ (last visited September 22, 2023) (reporting the Idaho AG issued a consumer alert regarding solar companies' use of misleading sales tactics through door-to-door sales and social media advertisements); Lauren Trager, *Missouri Attorney General Sues Solar Panel Company After Customer Complaints, News 4 Investigation*, KMOV, September 30, 2022, available at https://www.kmov.com/2022/10/01/missouri-attorney-general-sues-solar-power-company-after-customer-complaints-news-4-investigation/ (last visited September 22, 2023) (reporting that former Missouri Attorney General and now US Senator Eric Schmitt sues Pink Energy for making false promises and misrepresentations to consumers, deception, and concealing material facts); Press Release, Office of the Attorney General of Connecticut, *Attorney General Tong Sues Vision Solar Over Unfair and Deceptive Sales, Violations of Home Improvement Act* (March 16, 2023), available at https://portal.ct.gov/AG/Press-Releases/2023-Press-Releases/Attorney-General-Tong-Sues-Vision-Solar-Over-Unfair-and-Deceptive-Sales (last visited September 22, 2023) (disclosing that the Attorney General of Connecticut sued Vision Solar for preying on low-income, elderly, and disabled homeowners, pressuring them into unaffordable loans for solar panels that in some cases were never activated); David Lazarus, *Column: This Solar Company Wouldn't Let a Dead Woman out of Her Contract*, LA TIMES, June 1, 2021, available at https://www.latimes.com/business/story/2021-06-01/column-solar-power-dead-customer (reporting that Vivint (subsequently Sunrun) signed up a 91-year-old woman for solar panels weeks before her death and then steadfastly refused the family's pleas to cancel the contract after her death).

[3] *See, Vivint Solar Buyers Ink Deal in Predatory Sales Suit*, LAW360, Sept. 12, 2022, https://www.law360.com/articles/1529150/vivint-solar-buyers-ink-deal-in-predatory-sales-suit (last visited on October 19, 2022); Press Release, Better Business Bureau, *BBB Scam Alert: "Free solar panels" can cost you big time! How to spot a phony offer and find a trustworthy business* (September 22, 2023), available at https://www.bbb.org/article/scams/27595-bbb-scam-alert-free-solar-panels-can-cost-you-big-time-how-to-spot-a-phony-offer (last visited on September 28, 2023); Better Business Bureau Business Profile of EVERBRIGHT Energy Corporation, Current Alert of deceptive sales practices, available at https://www.bbb.org/us/tx/houston/profile/solar-energy-design/EVERBRIGHT-energy-corporation-0915-90035524 (last visited September 28, 2023); Press Release, California Contractors State Licensing Board, *CSLB Warns Consumers to be Cautious of Misleading and Illegal Solar Advertisements* (April 17, 2023), available at https://www.cslb.ca.gov/Resources/PressReleases/2023/Illegal_Advertisements.pdf (last visited September 28, 2023); Better Business Bureau Business Profile of Solar Mosaic LLC, Current Alert of forced payments for solar services not received, available at https://www.bbb.org/us/ca/oakland/profile/financial-services/solar-mosaic-llc-1116-444414/complaints (last visited September 28, 2023); Randy Travis, *Georgia PSC 'getting lit up' with complaints about home solar ripoffs*, FOX5 ATLANTA, May 26, 2022, available at https://www.fox5atlanta.com/news/psc-getting-lit-up-with-complaints-about-home-solar-ripoffs (last visited September 28, 2023); Dale Yurong, *198 Fresno County residents cheated in solar power scam*, ABC30 FRESNO, September 19, 2019, available at https://abc30.com/fresno-county-fersno-scam-solar-fraud/5554203/ (last visited September 28, 2023); *Vivint Solar Investors Sue Brass Over Predatory Sales Worries*, LAW360, Mar. 10, 2020, https://www.law360.com/articles/1252108/vivint-solar-investors-sue-brass-over-predatory-sales-worries (last visited on October 19, 2022); Kurtis Ming, *California Establishes Fund for Victims of Solar Fraud*, CBS SACRAMENTO, Jul. 25, 2022, available at https://www.cbsnews.com/sacramento/news/california-establishes-fund-for-victims-of-solar-fraud/ (last visited on October 19, 2022); *CFPB Takes Action Against Fintech Company GreenSky for Enabling Merchants to Secure Loans For Consumers Without Their Authorization*, CONSUMER FINANCIAL

5
COMPLAINT

16.    EverBright provides a range of financing options targeted at consumers for solar panels and related products. EverBright's focuses on solar leases and PPAs.

17.    Under the lease and PPA options, consumers ostensibly allow EverBright to install solar panel systems on the consumers' homes, but EverBright – not the consumer – retains ownership of the panels and related systems.

18.    Under PPAs, the consumer commits to paying a certain per kilowatt-hour (kWh) amount for the electricity that the panels generate. EverBright advertises the kWh price as being lower than the local utility's rate – however, EverBright increases the cost each year.

19.    EverBright offers two types of PPAs: EverFixed and EverFlex. Under the EverFixed PPA option, the consumer's monthly payments are calculated based on a yearly average solar productivity at a fixed kWh rate.

20.    Under the EverFlex PPA option, monthly payments are based on the actual power generation that the solar system produces monthly. Thus, unlike the EverFixed option, the monthly payment under an EverFlex PPA can vary based upon the kWh produced over the month.

21.    Both the Everfixed and EverFlex PPA models are long-term commitments of 25 years. The monthly PPA rate increases incrementally over the course of the contract period, with the final monthly payments typically being approximately double the starting monthly payment. All the while, the solar panel system provides diminishing returns as it ages and wears.

22.    Under both PPA options, EverBright makes money off of the tax credits it claims owning the solar systems. EverBright generates revenue by collecting government incentives, such as the federal Investment Tax Credit, upon installation of the panels. Thus, EverBright is not

---

PROTECTION BUREAU, Jul. 12, 2021, https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-fintech-company-greensky-for-enabling-merchants-to-secure-loans-for-consumers-without-their-authorization/#:~:text=The%20CFPB%20issued%20a%20consent,to%20prevent%20future%20fraudulent%20loans (last visited October 19, 2022); Jeff Goldman, NJ.COM, Oct. 24, 2019, *Vivint Solar Agrees to Pay $122k Fine Over Charges of Deceptive Door-to-Door Sales Practices*, https://www.nj.com/news/2019/10/vivint-solar-agrees-to-pay-122k-fine-over-charges-of-deceptive-door-to-door-sales-practices.html (last visited October 19, 2022); *Vivint, Inc. to pay $375,000 to Resolve Allegations of Deceptive Advertising and Sales Practices*, Feb. 12, 2015, GEORGIA OFFICE OF THE ATTORNEY GENERAL CONSUMER PROTECTION DIVISION, https://consumer.georgia.gov/press-releases/2015-02-12/vivint-inc-pay-375000-resolve-allegations-deceptive-advertising-and-sales (last visited on October 19, 2022).

incentivized to actually determine whether or not the consumer can pay for the multi-thousand-dollar contract. Instead, EverBright's incentive structure is based upon signing up as many consumers as quickly as possible.

23.     The PPA encumbers the property, meaning that the original consumer and homeowner cannot sell the property without either paying off the PPA or transferring the PPA to the new owner, which is only at the discretion of the new owner and EverBright.

24.     EverBright relies on its sales representatives to market and sell its products and services through a paperless, online platform. Yet, EverBright has lax oversight in monitoring what its salespersons actually represent to consumers.

25.     To expand its business, EverBright designed, implemented, and oversees a program that entices solar installation contractors ("Partners") to partner with EverBright by promising that "EverBright is the complete solar proposal tool that will help you convey savings and urgency for every solar home project."  EverBright Partners and the sales agents of these Partners are deputized to arrange leases or PPAs on behalf of EverBright. The availability of EverBright's various financing options allows the Partner contractors to close more transactions with near immediate approval.

26.     EverBright controls the training for its Partners. Specifically, EverBright touts that it "partner(s) with a variety of solar professionals with various experience selling solar. To help all our users sell better and close more solar projects, we developed the EverBright training portal to give our partners the tools they need to master the EverBright platform."[4] The EverBright platform contains the following training guides:

     a)  Partner Knowledge Base

     b)  Milestone Deliverables Checklist

     c)  Product Spec Sheets

     d)  Sales User Guides

     e)  Operations User Guides

     f)  Training Videos

[4] *Id.*

7

COMPLAINT

g) Approved Vendor Lists[5]

27.    EverBright vests the sales agents of its Partners like Better Earth with the authority to obtain nonpublic Personally Identifiable Information ("PII") from consumers and to submit loan or PPA applications on their behalf. The Partners and their sales agents are EverBright's agents in originating loans or PPAs.

28.    EverBright offers its Partners immediate, on-the-spot approval of the lease or PPA applications that they submit through an electronic, paperless process. This assures the Partners that they can close transactions in minutes with the assurance that they will be promptly paid for every deal they close. In fact, EverBright claims it does not even run a credit check until after a customer has signed a contract.[6]

29.    On information and belief, EverBright retains a portion of every transaction generated by the sales agents of its "Partners to cover its fees and charges. Thus, both EverBright and the Partners financially benefit from every transaction generated by their sales agents. EverBright is thereby incentivized to keep Partners happy as they are agents and joint venturers in the EverBright program and the source of EverBright's fees. Without salespeople, EverBright could not facilitate loans. Plaintiff will refer to this scheme as the "EverBright Program."

30.    The EverBright Program enables and facilitates the exploitation of vulnerable consumers. Upon information and belief, there are little to no effective safeguards in the EverBright Program to protect consumers. As a result, consumers are placed in leases and PPAs whose terms they had no opportunity to review, and that they do not understand., or, in the case of Plaintiff, never even saw or signed

31.    EverBright's business model allows its Partners to reap massive profits from saddling consumers with tens of thousands of dollars in debt, incentivizing entering unwitting consumers into the leases and PPAs by any means necessary. The EverBright Program's paperless system, focus on speed, and financial incentives allow Partners such as Better Earth to close sales

---

[5] *Id.*

[6] https://www.goeverbright.com/faq, last visited December 4, 2024 ("A hard inquiry will happen 30 days after the first phase of your installation, which includes your signed agreement and completed Welcome Call, is approved by EverBright.").

transactions, lock customers into financing, and receive immediate payment through the EverBright Program with no regard to their ability to actually perform the work contracted, including without seeking the necessary approvals from local governments.

32.    EverBright deputizes the salespersons of its Partners with broad authority to initiate leases and PPAs and finalize contracts using EverBright forms on Everbright's online, paperless system, and on behalf of EverBright. EverBright retains the right to control its Partners' conduct by, among other things, (1) requiring Better Earth sales agents to use specific training material, software, applications, and technology when engaging in transactions with consumers on EverBright's behalf; (2) controlling the EverBright products Better Earth sales agents could offer, the terms and conditions of the products offered, the method of presentation of the products offered, and the contractual documents that could be utilized; (3) controlling the marketing and sales tactics of Better Earth and its sales agents; (4) retaining the right to discipline Better Earth and sales agents for violations of policies and procedures set by EverBright; (5) requiring all sales agents who offer contracts using EverBright forms, including those sales agents of Better Earth, to be registered with the CSLB as being employed by EverBright; and (6) retaining the right to terminate Better Earth and/or Better Earth sales agents from the EverBright Program.

33.    EverBright also ratifies its Partners' conduct by holding consumers such as Plaintiff liable on leases and PPAs that they never saw or signed and by refusing to investigate reports of forgery, fraud, and identity theft. Instead of assuring that lease agreements and PPAs generated in Everbright's name are valid, EverBright simply pockets a portion of every lease and PPA generated by its Partners and sweeps customer complaints under the rug.

34.    Better Earth participated in the EverBright Program and was one of Everbright's Partners. It utilized a fraudulent scheme to saddle consumers with PPAs that the consumer never entered into.

**EverBright and its Salespeople Entrapped Plaintiff in a Fraudulent PPA**

35.    Plaintiff is 53-year-old homeowner who lives in Porterville, CA. Plaintiff speaks Spanish and speaks virtually no English. She does not read English.

36.     In or around December 2023, two men showed up unannounced to Plaintiff's home selling solar panels. Plaintiff was not home at the time. One of Plaintiff's sons was home and answered the door. He told the men that Plaintiff was not home and that she was at work nearby.

37.     The two men then showed up at Plaintiff's place of work. When the men arrived, she was busy in the middle of her workday. At this time, Plaintiff was very concerned about finances because she was facing serious medical challenges and related expenses. Plaintiff listened to the salesmen's pitch because she needed to save money.

38.     One of the salesmen spoke only English. Because Plaintiff does not speak English, Plaintiff spoke in Spanish with the other salesman, who identified himself as "Kai." Kai told Plaintiff that the solar panels would be free and that she would pay a significantly reduced energy bill if she allowed solar panels to be installed on her roof. Kai told Plaintiff that she would be paying $240 per month instead of her higher utility bills. Plaintiff asked how the panels would be "free" if she was paying $240 per month, and Kai told her that her Edison bill would be significantly reduced so she would be saving money. Plaintiff's Edison bills were around $450 per month at that time. Since she had serious medical issues, Plaintiff needed to save all the money she could.

39.     Because Plaintiff was at work helping customers when the salesmen showed up, she asked if she could think about it. Kai told Plaintiff that the "free" panel deal would not be available long, so it had to be done immediately. The salesmen handed Plaintiff an electronic device with some document in English on it. Plaintiff did not know what it was because she does not read English. Plaintiff asked to see a Spanish copy of what Kai was showing her. Kai said he only had an English version, but that he would provide Plaintiff with a Spanish language version later. Plaintiff was not given the opportunity to review any information in Spanish, despite speaking to Kai in Spanish, and not being able to understand what the other salesman said in English. Plaintiff was never shown and did not sign documents in Spanish.

40.     After being asked by Kai, Plaintiff gave her email address: garciaaurora71@ymail.com. Plaintiff regularly uses this email address, and she has never used another email address.

41.     Plaintiff started receiving some emails in Spanish from a "betterearth.solar" email

address. These emails went to Plaintiff's email address (garciaaurora71@ymail.com). The emails were in Spanish but were addressed to someone named "Maria." Plaintiff's name is Aurora, not Maria. However, Plaintiff did not receive a copy of any contract or agreement in either English or Spanish.

42.     Solar panels were thereafter installed on Plaintiff's home. Plaintiff trusted Kai and relied upon what he had told her about the panels being free, so Plaintiff allowed the panels to be installed. At the time the panels were installed, Plaintiff had not received a copy of any contract or agreement in either English or Spanish, nor had she agreed to any contract or agreement.

43.     In February 2024, Plaintiff was getting nervous because she was confused as to why the panels had been installed without ever agreeing to or having received a contract or agreement. On February 13, 2024, Plaintiff responded to one of the emails and asked for a copy of any contract or agreement. Plaintiff did not receive a response to her inquiry.

44.     Thereafter, she had one of her sons try to reach out to the installers since he spoke English. On February 14, 2024, somebody named Derrick Hansen (derricksolarsales@gmail.com) sent Plaintiff's son a copy of an EverBright Everfixed PPA that EverBright claimed Plaintiff signed. However, the agreement is in English, lists a phone number of (323) 887-3827, and an email address of auroragb12@outlook.com.

45.     Plaintiff has never seen nor used the email address or phone number listed for her on the alleged PPA. Upon information and belief, EverBright or its agents fraudulently created this email address and used it to fraudulently affix a signature purportedly belonging to Plaintiff to the PPA.

46.     The alleged agreement, which Plaintiff never saw and could not have read even if it was ever shown to her, states that it is for a 25-year PPA and that monthly payments will increase yearly, with monthly payments ultimately being $601.14. Plaintiff was never told this information, never agreed to it, never signed any agreement with such information, and could not afford monthly payments that ultimately went up to $601.14 per month – all while still paying an electricity bill.

47.     In or around September 2024, Plaintiff started receiving past due notices from

EverBright.

48.     After realizing that EverBright and its agents had fraudulently entered Plaintiff into a transaction to which Plaintiff did not agree, Plaintiff attempted to rescind any purported PPA and/or contract(s) with EverBright. Plaintiff's son called EverBright, but EverBright refused to investigate Plaintiff's allegations.

49.     To date, EverBright has ignored Plaintiff's lawful rescission of the fraudulent PPA and/or contract(s) that it contends Plaintiff entered into.

50.     Although Plaintiff has previously rescinded any alleged PPA or contracts, and such PPA or contracts are forged, rendering them void *ab initio*, this complaint shall constitute separate notice of the forgeries and the request for rescission pursuant to the HSSA, Civil Code §§1689.7 and 1689(b)(1) and violations of the CLRA.

51.     EverBright continues to claim that Plaintiff is bound by a PPA to which she never agreed, thereby ratifying all actions taken by Better Earth and any sales agents.

52.     EverBright's actions have had a negative effect on Plaintiff and have caused her to suffer non-economic damages including emotional distress, stress, anxiety, and loss of enjoyment of life. Plaintiff is terrified that EverBright will encumber her home. Plaintiff is also extremely nervous because she is in cancer remission, and this ordeal has caused Plaintiff additional stress both financially and emotionally. The uncertainty is placing a significant burden on Plaintiff during a time when she should be focused on her health and recovery.

### FIRST CLAIM
**(Fraudulent Misrepresentation and Concealment)**
**(On behalf of Plaintiff against EverBright)**

53.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

54.     EverBright and its agents made false representations to Plaintiff including, but not limited to:

    a)     Concealing the fact that EverBright and its agents were selling and/or otherwise marketing an EverBright PPA;

    b)     Concealing the fact that EverBright and its agents used fake information to

complete a PPA in Plaintiff's name; and

c)      Concealing the fact that EverBright and its agents were placing Plaintiff in a 25-year PPA.

55.    These representations were false when made. EverBright knew the representations were false or recklessly disregarded the truth. EverBright intended for Plaintiff to rely on the truth of these representations and Plaintiff reasonably did so.

56.    EverBright had a legal obligation to disclose any purported PPA documents and related documents to Plaintiff, which included many material terms and conditions but intentionally concealed and did not disclose the above documents to Plaintiff at any point until after installation of solar panels on Plaintiff's home.

57.    The representations and intentional concealment by EverBright were material and were willful, malicious, wanton, intentional, and reckless.

58.    Plaintiff has been harmed by the representations and the representations were a substantial factor in causing harm to Plaintiff.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CLAIM**
**(Negligence)**
**(On behalf of Plaintiff against EverBright)**

59.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

60.    Plaintiff alleges that at all times relevant herein, EverBright and its agents acted negligently, carelessly, recklessly, and/or unlawfully in representing facts to Plaintiff, failing to disclose complete and accurate information to Plaintiff, and in designing and implementing a program which enables and facilitates unauthorized leases and PPAs. Specifically, EverBright and its agents acted negligently, carelessly, recklessly, and/or unlawfully by:

a)      Concealing the fact that EverBright and its agents were selling and/or otherwise marketing an Everbright PPA;

b)      Concealing the fact that EverBright and its agents fabricated personal identifying information for Plaintiff to submit a lease application and/or PPA application for

Plaintiff; and

c)    Concealing the fact that EverBright and its agents were placing Plaintiff in a 25-year PPA.

61.    As a direct and legal result of the wrongful acts and/or omissions of EverBright and its agents, Plaintiff has been harmed.

WHEREFORE, Plaintiff prays for relief as set forth below.

**THIRD CLAIM**
**(Violations of the Consumers Legal Remedies Act, Civil Code §1750, *et seq*.)**
**(On Behalf of Plaintiff and the General Public Against EverBright)**

62.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

63.    The Consumers Legal Remedies Act, Civil Code §1750 *et seq.* ("CLRA") was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code §1770 that are prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer.

64.    At all relevant times, Plaintiff was a "consumer" within the meaning of the CLRA, Civil Code §1761(d). EverBright is a company and, as such, are "persons" as that term is defined in California Civil Code §1761(c). The transaction from which this action arises was intended to result in the sale or lease of goods or services to a consumer and is covered by the CLRA. EverBright and its agents' actions are also considered "goods" pursuant to Civil Code §1761(a), and "services" pursuant to Civil Code §1761(b).

65.    The acts and practices of EverBright and its agents violated the CLRA and constitute the following unfair methods of competition and unfair or deceptive practices:

a.    Representing and advertising goods or services with the intent to not sell it as advertised in violation of Civil Code §1770(a)(9);

b.    Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of Civil Code §1770(a)(13);

c.    Representing that a transaction confers or involves rights and remedies which it

14
COMPLAINT

does not have or involve, or are prohibited by law in violation of Civil Code §1770(a)(14);

d. Representing that the subject of a transaction has been supplied in accordance with a previous transaction when it has not, in violation of Civil Code §1770(a)(16); and

e. Misrepresenting the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction with a consumer, in violation of Civil Code §1770(a)(18).

66. EverBright and its agents' violations of the CLRA present a continuing threat to Plaintiff and the public in that EverBright and its agents continue to engage in the above-referenced acts and practices.

67. The acts and practices of EverBright and its agents are willful, intentional, and approved by managing agents as detailed above. The acts and practice have harmed Plaintiff and Plaintiff is entitled to an award of damages pursuant to Civil Code §1780(a) in an amount to be proven at trial.

68. Plaintiff has satisfied all statutory notice requirements except as may have been excused by misconduct of EverBright. This Complaint shall serve as further notice of the statutory violations described therein. EverBright has failed and refused to make restitution or offer Plaintiff adequate correction, repair, relief, or other remedy.

69. Additionally, Everbright's violations of Civil Code §1770 present a continuing threat to members of the public in that EverBright continues to engage in the alleged practices and has not ceased.

70. Plaintiff seeks actual damages, an injunction, restitution, punitive damages, and any other relief the court deems proper pursuant to Civil Code §1780(a).

71. Plaintiff is entitled to an award of attorneys' fees and costs pursuant to Civil Code §1780(d).

WHEREFORE, Plaintiff prays for relief as set forth below.

//

**FOURTH CLAIM**
**(Violations of the Rosenthal Fair Debt Collection Practices Act, Civil Code §1788, *et seq.*)**
**(On behalf of Plaintiff against EverBright)**

72.    Plaintiff realleges and incorporates herein by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

73.    The Legislature enacted the Rosenthal Act in 1976 to ensure the integrity of our banking and credit industry. Civ. Code §1788.1(b). The Legislature found that "unfair or deceptive debt collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers." Civ. Code §1788.1(a)(1).

74.    At all times relevant herein EverBright was and is a "debt collector" within the meaning of Civil Code §1788.2(c). EverBright regularly and in the ordinary course of business, on behalf of itself or others, engages in acts and practices in connection with the collection of consumer debt.

75.    The debt which EverBright is attempting to collect from Plaintiff is a "consumer debt" within the meaning of Civil Code §1788.2(f). Plaintiff is a "debtor" within the meaning of Civil Code §1788.2(h) in that she is natural person from whom EverBright sought and continue to seek to collect a consumer debt alleged to be due and owing.

76.    EverBright has a non-delegable duty under the Rosenthal Act not to commit violations of the Act, and not to allow its agents to commit such violations, which duty EverBright is prohibited from violating.

77.    Since 2024, EverBright has attempted to collect a non-existent debt from Plaintiff. EverBright has contacted Plaintiff in an effort to collect amounts that are not owed as matter of law because Plaintiff never entered into any contract or PPA with EverBright, and furthermore lawfully rescinded any alleged contracts or PPAs. Plaintiff does not owe any amount to EverBright.

78.    EverBright made false representations that Plaintiff owed monthly payments to EverBright even though Plaintiff never had any obligation to EverBright.

79.    EverBright has violated the Rosenthal Act. The violations include, but are not limited to

16
COMPLAINT

the following:

    a.    EverBright made and used false, deceptive, and misleading representations in an attempt to collect the fraudulent account, in violation of California Civil Code § 1788.17;[7]

    b.    EverBright misrepresented the character, amount, or legal status of the fraudulent account, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[8]

    c.    EverBright is attempting to collect the fraudulent account from Plaintiff, an action that cannot lawfully be taken, in violation of California Civil Code 1788.13(e) and 1788.17;[9]

    d.    EverBright misrepresented that the fraudulent account is lawfully owed by Plaintiff, in violation of California Civil Code § 1788.17;[10]

    e.    EverBright is attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the law agreement creating the fraudulent account or otherwise permitted by law, in violation of California Civil Code §§ 1788.13(e) and 1788.17;[11]

80.    Furthermore, EverBright violated Civ. Code §1788.17, which requires every debt collector collecting or attempting to collect a consumer debt to comply with the provisions of 15 U.S.C. §1692b to §1692j of 15 U.S.C. §1692.

81.    As a proximate result of EverBright's violations of the Rosenthal Act, Plaintiff suffered damages in amounts to be proven at trial.

82.    Plaintiff is entitled to recover her actual damages pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(1), or in the alternative, Civil Code §1788.30(a), including, but not limited to, damages for her emotional distress.

83.    Plaintiff is also entitled to recover statutory damages pursuant to Civil Code §1788.17, which incorporates by reference the remedies of 15 U.S.C. §1692k(a)(2)(A), or in the alternative,

---

[7] 15 U.S.C. §§ 1692e and 1692e(10).
[8] 15 U.S.C. § 1692e(2)(A).
[9] 15 U.S.C. § 1692e(2), 1692e(5) and 1692e(10).
[10] 15 U.S.C. § 1692e, 1692e(5), and 1692e(10).
[11] 15 U.S.C. § 1692f(1).

Civil Code §1788.30(b).

84.     Plaintiff is entitled to attorneys' fees and costs pursuant to Civil Code §1788.17, incorporating by reference 15 U.S.C. §1692k(a)(3), or in the alternative, Civil Code §1788.30(c).

WHEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CLAIM**
**(Violations of the Home Solicitation Sales Act, Civil Code §1689.5, *et seq.*)**
**(On behalf of Plaintiff against EverBright)**

85.     Plaintiff realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

86.     The Legislature enacted the HSSA in 1971 to protect California consumers against the type of pressures that arise when a sales agent sells goods or services to a customer outside of appropriate trade premises. A reluctant buyer can easily walk away from a seller's place of business, but he/she cannot walk away from his/her own home (or, in this case, place of work) and may find that the only practical way of getting the seller to leave is to agree to buy what the seller is selling.

87.     As a result, the HSSA broadly defines "home solicitation" to mean "any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or services or both, made at other than appropriate trade premises in an amount of twenty-five dollars ($25) or more, including any interest or service charges." Civ. Code §1689.5(a). The definition focuses not on who initiated the contact between the buyer and the seller, but on where the contract was made.

88.     EverBright's PPAs are made in connection with the sale of goods or services (i.e. the goods and services promised in the home improvement contracts) and are therefore covered by the HSSA. The term "goods" in that statute is broadly defined to mean any "tangible chattels bought for use primarily for personal, family, or household purposes", with exceptions not relevant to this case. Civ. Code §1689.5(c). The term "services" is defined to mean "services furnished in connection with the repair, restoration, alteration, or improvement of residential premises." Civ. Code §1689.5(d). While the HSSA excludes from its purview financial services offered by banks "that are not connected with the sale of goods or services, as defined herein," it

does *not* exempt financial services offered by banks or others that *are* connected with the sale of goods or services.

89.     Because of these pressures, the HSSA gives the non-senior citizen consumer the right to rescind a home solicitation contract until midnight of the third business day after the buyer receives a signed and dated copy of the contract or offer to purchase that complies with Section 1689.7. Civ. Code §1689.6(a)(2).

90.     Home solicitation sales contracts must also be "written in the same language, e.g. Spanish, as principally used in the oral sales presentation" and "include in immediate proximity to the space reserved for the buyer's signature, [a three-day cancellation notice] in a size equal to at least 12-point boldface type, which shall be dated and signed by the buyer." Civ. Code §1689.7(a)(4)(A).

91.     The precise contents of the notice of cancellation are set forth in the HSSA and cannot be modified. If a seller fails to strictly comply with these notice provisions, the buyer retains the right to rescind the contract indefinitely, unless and until the seller fully complies with the HSSA. Civ. Code §1689.7(g).

92.     The seller is not entitled to any compensation in the event of cancellation – even when the seller has already performed services. Civ. Code §1689.11(c) ("If the seller has performed any services pursuant to a home solicitation contract or offer prior to its cancellation, the seller is entitled to no compensation."); *Nordeman v. Dish Network LLC*, 525 F.Supp.3d 1080, 1086 (N.D. Cal. 2021) ("A violation of the statute precludes any obligation of the buyer to pay for services from the seller prior to cancellation."). If goods have been provided, the seller can recover them at its own expense if it acts promptly and follows the statute's procedural requirements, including the required refund of any payments made by the consumer pursuant to the now-rescinded contract. Civ. Code §1689.10(a), (c).

93.     If the buyer rescinds, the seller must return anything the buyer paid within ten (10) days of the notice of cancellation.

94.     The buyer must make the goods available to the contractor for twenty (20) days from the date of rescission. If the seller fails to retrieve the goods, the buyer may keep the goods without

further obligation.

95.    The alleged contract that EverBright seeks to enforce against Plaintiff was not entered into at an "appropriate trade premise," is a contract for "goods" and/or "services" pursuant to Civil Code §1689.5(c) and (d), and is regulated by and subject to the HSSA.

96.    Plaintiff disputes that any contract or PPA ever existed because any alleged EverBright PPA is void *ab initio* due to fraud in the execution. Furhter, the alleged EverBright PPA is in English, and Plaintiff spoke to "Kai" in Spanish. Nevertheless, Plaintiff exercised her statutory right to rescind any and all contract(s) EverBright contends Plaintiff entered into and hereby further informs EverBright of her rescission of any such contract(s).

97.    EverBright failed to respond to Plaintiff's rescission of the non-existent contracts and/or PPA(s). In violation of the HSSA, EverBright has denied Plaintiff her statutory right to cancel.

98.    EverBright violated Civil Code §1689.5*, et seq.* by failing to provide Plaintiff with any fully executed contract signed by Plaintiff and EverBright and its agents, by failing to timely provide Plaintiff with any notice of her three-day right to cancel, and by failing to return any amounts collected from Plaintiff within ten (10) days of the date she exercised her statutory right to rescind any contracts EverBright or its agents contend Plaintiff entered into.

99.    Plaintiff received no fully executed contract because she never signed a contract with EverBright, much less a Spanish contract, as Civil Code §1689.7(a)(4)(A) requires.

100.    An actual controversy exists between Plaintiff, on the one hand, and EverBright, on the other hand, concerning their rights and duties under the HSSA. This controversy is ripe for adjudication. Plaintiff is entitled to a declaratory judgment adjudicating the rights and duties of the parties under the HSSA.

101.    Plaintiff is entitled to actual or nominal damages pursuant to Civil Code § 3360 for EverBright's violations.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SIXTH CLAIM**
**(Violations of Business and Professions Code §17200, *et seq*.)**
**(On behalf of Plaintiff against EverBright)**

102.    Plaintiff realleges and incorporates by reference as though fully set forth herein each and

every allegation contained in the paragraphs above.

103. Plaintiff has standing to bring this claim because she has lost money or property as a result of the acts and practices alleged herein.

104. The UCL defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice, and prohibits such conduct. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein, EverBright and its agents committed and is continuing to commit acts of unfair competition proscribed by the UCL, including the practices alleged herein.

105. The business acts of EverBright, as hereinabove alleged, constitute unlawful business practices in that the acts and practices violate Civil Code §1750 *et seq.*; Civil Code §1689.5 *et seq*; and Civil Code §1788 *et seq.*

106. The business acts of EverBright, as hereinabove alleged also constitutes unlawful practices under federal law in at least two respects:

      a) EverBright has engaged in unfair acts and practices with regard to originating consumer financial products or services to customers who did not authorize them in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B); and

      b) EverBright has engaged in unfair acts and practices by structuring consumer financial products or services activities in a manner that enables, facilitates and allows unauthorized loans in violation of 12 U.S.C. §§5531(a) and 5536(a)(1)(B).

107. The business acts and practices of EverBright, as hereinabove alleged, constitute unfair business practices in that the acts and practices offend public policy and are substantially injurious to consumers. The acts and practices have no utility that outweighs the substantial harm to consumers.

108. The business acts and practices of EverBright and its agents as hereinabove alleged, constitute fraudulent business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline. The practices alleged are fraudulent and unfair, constituting deceptive

practices which were predatory under the circumstances set forth herein.

109.    The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that EverBright and its agents are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by the Court.

110.    Pursuant to Business and Professions Code § 17203, Plaintiff seeks a public injunction for the unlawful, unfair, and fraudulent engaged in by EverBright and its agents.

111.    Plaintiff is entitled to restitution of all amounts taken by EverBright and its agents.

112.    Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this action under Code of Civil Procedure §1021.5 because:

a)    A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

b)    This action will result in a significant public benefit by compelling EverBright to comply with the law.

c)    Unless this action is prosecuted, EverBright's activities will go unremedied and will continue unabated.

d)    Plaintiff is an individual of modest means with limited access to the courts and the civil justice system. Unless attorneys' fees, costs and expenses are awarded against EverBright, Plaintiff will not recover the full measure of her loss.

WHEREFORE, Plaintiff prays for relief as set forth below.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(1)    An award of actual damages, including but not limited to, emotional distress damages;

(2)    An award of general damages;

(3)    An award of punitive damages;

(4)    An award of statutory damages;

(5)    An award of nominal damages;

(6)     An award of civil penalty;

(7)     An award of restitution;

(8)     An order finding and declaring that any alleged contracts and/or PPA between Plaintiff and EverBright and its agents have been cancelled, rescinded, and are otherwise void;

(9)     An order finding and declaring that the solar panels affixed to Plaintiff's home are the property of Plaintiff without obligation to pay for them;

(10)    An order finding and declaring that EverBright's acts and practices challenged herein are unlawful, unfair, and fraudulent;

(11)    A comprehensive public injunction barring EverBright from engaging in the unlawful, unfair, and fraudulent business practices challenged herein and compelling EverBright to conform their conduct to the requirements of the law;

(12)    Prejudgment interest at the maximum legal rate;

(13)    An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

(14)    Any other and further relief as this Court shall deem just and proper.

Dated: December 16, 2024                    KEMNITZER, BARRON & KRIEG, LLP


                                     By:    /s/ *Kristin Kemnitzer*
                                            KRISTIN KEMNITZER
                                            ADAM J. MCNEILE
                                            MALACHI J. HASWELL
                                            KATHERINE SASS

**JURY TRIAL DEMANDED**

        Plaintiff demands a trial by jury on all issues so triable.

Dated: December 16, 2024                    KEMNITZER, BARRON & KRIEG, LLP


                                     By:    /s/ *Kristin Kemnitzer*
                                            KRISTIN KEMNITZER
                                            ADAM J. MCNEILE
                                            MALACHI J. HASWELL
                                            KATHERINE SASS

23
COMPLAINT